***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The date of the compensable injury which is the subject of this claim is July 25, 2007;
2. That on such date the parties hereto were subject to and bound by the provisions of the North Carolina Worker' Compensation Act;
3. That on such date the Employer-Employee relationship existed between the Employee-Plaintiff and the Employer-Defendant;
4. That on such date the Employer-Defendant employed three (3) or more employees;
5. That as of such date, the carrier of workers' compensation insurance in North Carolina for the Employer-Defendant was Zurich American Insurance Company; and
6. That the Employee-Plaintiff's average weekly wage is $719.00.
 *********** EXHIBITS
The following exhibits were admitted into evidence at the hearing before the Deputy Commissioner:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement, all North Carolina Industrial Commission Forms, all Motions filed in this claim, Plaintiff's and defendants' discovery responses, medical records of Plaintiff, Plaintiff's employee file maintained by defendant-employer, and medical bills incurred by Plaintiff.
 (b) Stipulated Exhibit 2: Additional medical records and medical bills were submitted post-hearing.
 (c) Depositions of Dr. Thomas K. Carlton, III, Dr. Paul C. Perlik, and Dr. Jerry L. Barron *Page 3 
have been admitted into evidence
 *********** ISSUES PRESENTED
1. Did Employee-Plaintiff sustain a compensable injury by accident to her right shoulder on July 25, 2007, when she also sustained an injury to her left shoulder?
2. Is Employee-Plaintiff's right hand CTS compensable as an occupational disease that developed as a result of overuse of her right hand following the July 25, 2007 injury?
3. To what benefits is the Employee-Plaintiff entitled to receive under the North Carolina Workers' Compensation Act as a result of her compensable injury by accident of July 25, 2007 and the injuries that developed subsequent to the original injuries?
 ***********
Based upon the preponderance of the evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was a 42-year-old woman employed by Defendant-Employer as an assistant manager. On July 25, 2007, Plaintiff tripped over equipment while working a cash register in the course and scope of her employment, hitting her left arm on the way down.
2. Defendants accepted this claim with a Form 60 for Plaintiff's left shoulder on September 26, 2007.
3. On July 23, 2010, Plaintiff filed a new Form 18 setting forth an alleged claim for injury to her right shoulder and arm in addition to the original claim for injury to her left shoulder and arm. Pursuant to the new Form 18, Plaintiff alleged that she injured her right *Page 4 
shoulder and arm in the original accident of July 25, 2007. No Industrial Commission forms were filed alleging injury to Plaintiff's right shoulder at any time prior to the Form 18 filed on July 23, 2010. Defendants responded to the new Form 18 with a Form 61 denial of the new claim for right shoulder and right arm injury. To date, nothing has been filed with regards to Plaintiff's allegation of work-related right hand carpal tunnel syndrome, but she has raised this as an issue before the Industrial Commission.
4. Plaintiff originally came under the care of Dr. Thomas Buter of OrthoCarolina for treatment of her left shoulder. After an MRI of Plaintiff's left shoulder revealed tendinopathy or a partial tear of the supraspinatus, bursitis of the shoulder, and a possible labral tear, Dr. Buter referred Plaintiff to Dr. James Fleischli, a shoulder specialist. The medical notes from Dr. Buter admitted into evidence do not reference a right shoulder or arm injury.
5. On September 10, 2007, Plaintiff began treating conservatively with Dr. Fleischli for left shoulder pain. After an MRI of Plaintiff's cervical spine revealed no nerve impingement, Dr. Fleischli referred Plaintiff to a physiatrist for her continued complaints of pain. By late November 2007, Dr. Fleischli assigned a 5% permanent partial impairment ("PPI") rating to Plaintiff's left upper extremity and released her from his care. Dr. Fleischli did not treat Plaintiff for right shoulder or arm pain, nor do his notes reference the same.
6. For pain management, Plaintiff was evaluated by Dr. Sarjoo "Sam" Bhagia on December 17, 2007, for left shoulder pain and left upper extremity numbness. Following evaluation and an electrodiagnostic study, Dr. Bhagia opined that Plaintiff's left arm pain was not related to cervical issues and released Plaintiff from his care. Dr. Bhagia did not note any symptoms with regards to Plaintiff's right shoulder or arm.
7. On May 12, 2008, Plaintiff presented to Dr. Jerry Barron on her own and at the *Page 5 
recommendation of her primary care physician, with complaints of left shoulder pain. Dr. Barron ordered an MRI arthrogram of Plaintiff's left shoulder and noted that the MRI revealed degenerative changes about the AC joint with rotator cuff tendinosis, but no obvious full thickness tear was noted. Based on Plaintiff's report to Dr. Barron that conservative treatment had not helped her symptoms, Dr. Barron recommended surgery. On June 17, 2008, Dr. Barron performed an arthroscopic rotator cuff repair of the left shoulder as well as decompression.
8. On March 30, 2009, Dr. Barron advised that Plaintiff could return to work with a ten pound lifting restriction, no lifting above shoulder height, and no repetitive movement of the left shoulder. Plaintiff was released from Dr. Barron's care with a 15% PPI rating to her left arm. Defendants paid Plaintiff for Dr. Barron's rating, which totaled $16,378.56. Plaintiff was paid according to her rating pursuant to a Form 26A approved by the Industrial Commission on July 29, 2009. None of Dr. Barron's notes or treatment to this date mentions right shoulder, arm or hand pain.
9. In April 2009, Plaintiff began treating with Dr. T. Kern Carlton for pain management. Plaintiff complained exclusively of left shoulder pain. Dr. Carlton treated Plaintiff conservatively with medication and a recommendation for a TENS unit.
10. On January 28, 2010, Plaintiff reported pain in her right wrist for the prior two-month time period. Following an electrodiagnostic study of Plaintiff's right arm, Dr. Carlton noted mild right carpal tunnel syndrome and opined that Plaintiff's right hand CTS was caused by her left shoulder injury of 2007, because of Plaintiff's use of her right hand following her accident.
11. On April 15, 2010, Plaintiff returned to Dr. Barron with new complaints of pain in her right shoulder. Dr. Barron ordered an MRI of Plaintiff's right shoulder and stated that the *Page 6 
injury appeared work related "based upon the information that is made available" to him. Dr. Barron diagnosed Plaintiff with right shoulder impingement with moderate tendinosis of the rotator cuff tendon and bursitis. On September 14, 2010, Plaintiff underwent an arthroscopic subacromial decompression and distal clavicle excision of the right shoulder, performed by Dr. Barron.
12. On July 27, 2010, Plaintiff presented to Dr. Paul C. Perlik, board certified hand specialist, for an IME requested by defendants to determine the cause of Plaintiff's right hand symptoms. Following his exam, Dr. Perlik stated in his deposition that it is unlikely that Plaintiff's CTS is related to her injury of July 25, 2007, because her onset of symptoms was two and a half years later, and as with most CTS, the condition was likely idiopathic. Dr. Perlik noted that Plaintiff had not performed repetitive activities that would cause CTS. Dr. Perlik opined that routine use of Plaintiff's right hand was unlikely to be a causative factor secondary to less use of the left hand. Ultimately, Dr. Perlik stated that Plaintiff did not have any additional impairment from her 2007 injury attributable to her right side.
13. At his deposition, Dr. Carlton testified that in his opinion, Plaintiff's carpal tunnel syndrome stemmed from increased and repetitive use of her right hand following the immobilization of her left arm, especially because Plaintiff is left-hand dominant. Dr. Carlton confirmed, however, that he had never seen a job description or ergonomic evaluation of Plaintiff's job duties to determine whether his idea of repetitive activity was the same as Plaintiff's when she complained of having to perform the job duties with her right hand.
14. Dr. Perlik testified by deposition that he disagreed with Dr. Carlton's assessment of the causation between Plaintiff's right hand carpal tunnel syndrome and her injury to her left side. Dr. Perlik stated that from his review of Plaintiff's medical records and a physical *Page 7 
evaluation, Plaintiff's right hand carpal tunnel syndrome is idiopathic, and she is most likely predisposed to the condition.
15. Dr. Barron testified at his deposition that when he saw Plaintiff on April 15, 2010, he made the notation in his medical notes that the right shoulder had been hurting all along, but he admitted that had Plaintiff complained of right shoulder pain prior to that date, he would have made notations in his earlier medical note, which he did not do. Dr. Barron stated that he did not feel comfortable attributing Plaintiff's injury to either trauma or overuse, as his findings were consistent with either or both causes. Consistent with his medical notes, Dr. Barron testified that based on the history given to him and the facts that he had, Plaintiff sustained injury to her right shoulder when she fell in 2007, and there was a good chance the injury was aggravated by working with her right arm only. However, Dr. Barron admitted that he was basing this opinion primarily on the oral history given to him by Plaintiff herself, as there was no other medical evidence to support this theory of causation.
16. The testimony of Dr. Perlik is given the greater weight of the evidence given his greater qualification in determining the causation of Plaintiff's carpal tunnel syndrome than that of Dr. Carlton. Dr. Perlik is board certified in hand surgery, whereas Dr. Carlton is board certified in physical medicine and rehabilitation.
17. Dr. Carlton deferred to Dr. Barron on the issue of causation of Plaintiff's right shoulder condition explaining that Plaintiff followed with Dr. Barron for her right shoulder, rather than himself. Dr. Barron testified that he began treating Plaintiff for left shoulder pain in May 2008, and he has no record of right shoulder complaints until April 2010. Dr. Barron admitted that if Plaintiff had complained of right shoulder pain at any time during his treatment of her prior to April 2010, he would have documented it, yet none of his notes mention right *Page 8 
shoulder pain. Dr. Barron's testimony was that when Plaintiff complained of right shoulder pain, she told him her shoulder had been hurting all along and was caused by the fall from 2007. Dr. Barron speculated that the right shoulder injury could be related either to the actual trauma of the fall or the repetitive use following the injury to the left shoulder, but readily admitted that his speculation was based on the information Plaintiff herself gave him regarding the history of her symptoms, as no other medical documents confirmed the same. Thus, Dr. Barron's testimony relating to causation of Plaintiff's right shoulder impingement is based on speculation.
18. Based upon the preponderance of the evidence of the record and the credible medical evidence of record, the Full Commission finds that Plaintiff began complaining of right shoulder and right hand pain nearly three years after the compensable accident and approximately a year following her release to work without the restriction of right-hand dominant work only. Plaintiff's claim for her alleged injury for the right shoulder and arm injury is time-barred. None of the treating physicians have credibly attributed the right carpal tunnel syndrome or right shoulder impingement to Plaintiff's compensable injury.
19. Based upon the preponderance of the evidence of the record and the credible medical evidence of record, the Full Commission finds that Plaintiff's right shoulder condition and right-side carpal tunnel syndrome are not related to her compensable injury by accident occurring on July 25, 2007. Accordingly, Plaintiff has failed to prove by the greater weight of the evidence that her right shoulder condition and right carpal tunnel syndrome are compensable.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW *Page 9 
1. Plaintiff filed her alleged claim for right shoulder or right arm injury in July 2010, nearly three years after the accident to which Plaintiff attributes an alleged injury to her right shoulder and arm. Plaintiff is therefore time-barred from bringing her alleged claim for right shoulder or arm injury. N.C. Gen. Stat. § 97-22.
2. Plaintiff has not met her burden to show that her shoulder or right arm condition was caused by overuse syndrome stemming from her original injury by accident of July 25, 2007. Henry v. A.C.Lawrence Leather Co.,231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950).
3. To establish causation, the evidence must rise above the level of mere speculation and conjecture. Holley v. ACTS, Inc.,357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003). Plaintiff has raised as an issue before the Commission that she allegedly sustained an injury to her right shoulder and arm on or about July 25, 2007, and the Commission therefore finds that the medical evidence in this case does not establish a causal connection between Plaintiff's right hand carpal tunnel syndrome and the compensable injury occurring on July 25, 2007. Therefore, Plaintiff has failed to prove by the greater weight of the competent evidence that her right hand carpal tunnel syndrome is a compensable occupational disease. Accordingly, Plaintiff's claim must be denied. N.C. Gen. Stat. § 97-2 (6).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits related to her right hand carpal tunnel syndrome is *Page 10 
DENIED.
2. Plaintiff's claim for benefits related to her right shoulder and arm injury is DENIED.
3. Plaintiff has received all benefits to which she is entitled.
4. Each side shall bear their own costs.
This the ___ day of October 2011.
 S/_______________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/__________________ DANNY L. McDONALD COMMISSIONER
 S/__________________ TAMMY R. NANCE COMMISSIONER *Page 1